UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JIMMIE DARNELL DIXON | CIVIL ACTION |
| VERSUS | |
| N. BURL CAIN, ET AL. | NO. 15-45-SDD-RLB |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on November 20, 2017.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JIMMIE DARNELL DIXON            CIVIL ACTION

VERSUS

N. BURL CAIN, ET AL.            NO. 15-45-SDD-RLB

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The State has filed an opposition to the petitioner's application, the petitioner has filed a response. *See* R. Docs. 7, 8, 9, 14, and 15. There is no need for oral argument or for an evidentiary hearing.

On or about January 29, 2015, the *pro se* petitioner, an inmate confined at the Louisiana State Penitentiary, Angola, Louisiana, filed this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, attacking his 2007 criminal conviction and sentence, entered in 2008, in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on two counts of attempted first degree murder and two counts of second degree kidnapping. The petitioner attacks his conviction on the grounds that the verdict was not unanimous as required by state law, sufficiency of the evidence, and ineffective assistance of counsel.

**Procedural History**

On August 25, 2007, the petitioner was found guilty of two counts of attempted first degree murder, and two counts of second-degree kidnapping. On January 29, 2008, the petitioner was sentenced to a total of one hundred and ten (110) years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The petitioner thereafter filed an appeal, and on December 23, 2008 his conviction and sentence were affirmed by the Louisiana First Circuit Court

of Appeal. *See State v. Dixon,* 08-1038 (La. App. 1 Cir. 12/23/08), 2008 WL 6819594. On January 22, 2009, the petitioner filed an application for supervisory writs with the Louisiana Supreme Court, which was denied on October 30, 2009. *See State v. Dixon,* 09-0189 (La. 10/30/09), 21 So.3d 275.

On or about September 30, 2010, the petitioner filed an application for post-conviction relief ("PCR"), asserting numerous claims. After the filing of motions and various procedural objections, the trial court denied the petitioner's PCR application on August 23, 2013. The petitioner's writ applications seeking review were denied by the appellate court and by the Louisiana Supreme Court, on February 18, 2014 and November 14, 2014, respectively. On or about January 29, 2015, the petitioner filed the present application.

On March 3, 2017, the petitioner's application was denied as untimely. On March 27, 2017, this Court's Judgment was vacated and withdrawn, and this matter was referred back to the Magistrate Judge for further review. *See* R. Docs. 21 and 26. Accordingly, the Magistrate Judge now turns to the state's alternative argument regarding the timeliness of the petitioner's application, and the merits of the same.

## Applicable Law and Analysis

### Timeliness

The State of Louisiana asserts that the petitioner's application is untimely. In this regard, pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody. This limitations period begins to run on the date that the judgment becomes final through the conclusion of direct review or through the expiration of time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). As provided by the referenced statute, the time during which a properly filed application for state post-conviction or

other collateral review is thereafter pending before the state courts with respect to the pertinent judgment or claim shall not be counted toward any part of the one-year limitations period. 28 U.S.C. § 2244(d)(2). However, the time during which there are no properly filed post-conviction or other collateral review proceedings pending does count toward calculation of the one-year period. To be considered "properly filed" for purposes of § 2244(d)(2), an application's delivery and acceptance must be in compliance with the applicable laws and rules governing filings. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), *citing Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Further, a properly-filed state application is considered to be "pending" both while it is before a state court for review and also during the interval after a state court's disposition while the petitioner is procedurally authorized under state law to proceed to the next level of state court consideration. *See Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

The State argues that the petitioner's conviction became final on January 22, 2009, thirty (30) days after the December 23, 2008 decision of the Louisiana First Circuit Court of Appeal on direct appeal because the petitioner failed to timely file his application for supervisory review in the Louisiana Supreme Court. This Court has previously determined that the petitioner's writ application was timely filed. *See* R. Doc. 26.

Alternatively, the state argues that the petitioner's application is untimely because he failed to timely file his application for supervisory review with the Louisiana First Circuit Court of Appeal following the denial of his PCR application by the trial court on August 26, 2013. However, the petitioner's writ application was signed by the petitioner on September 25, 2013. *See* petitioner's exhibit "K." The courts of this Circuit have long concluded that the prison mailbox rule applies to the filing of pleadings submitted to courts by Louisiana *pro se* inmates. Pursuant to that rule, an inmate's pleadings are considered to be filed on the date that they are

presented to prison officials or placed into the prison mailing system for transmission to the Court, not on the date that they are ultimately received or docketed by the Court. *See Cooper v. Brookshire*, 70 F.3d 377, 379-80 (5th Cir. 1995); *Vicks v. Griffin*, 2008 WL 553186, *3 (E.D. La. Feb. 28, 2008). The inherent basis for the rule is a recognition that, "[u]nskilled in law, unaided by counsel, and unable to leave the prison, [a prisoner's] control over the processing of his [pleadings] necessarily ceases as soon as he hands it over to the only public officials to whom he has access – the prison authorities." *Cooper v. Brookshire, supra*, 70 F.3d at 379, *quoting Houston v. Lack*, 487 U.S. 266, 271-72 (1988). The *Cooper* court also recognized that application of the rule allows courts to sidestep such potentially difficult issues as the possible motivation of prison officials to delay or obstruct the filing of inmates' complaints, and "pretermits time-consuming examinations of the circumstances behind any delay." *Id.* Thus, in the absence of evidence to the contrary, courts have generally presumed that the date that an inmate has signed and dated his Complaint is the date that he has given it to prison officials for mailing to the courts. *See Toomer v. Cain*, 2010 WL 4723365, n. 3 (E.D. La. July 30, 2010) (finding that, "[g]enerally, a court will look to the date a prisoner signed his pleading"). In the instant case, the plaintiff's writ application, was signed and dated by him on September 25, 2013. Accordingly, the Court finds that September 25, 2013, is the applicable filing date of the plaintiff's writ application and was therefore timely filed.

      The petitioner's conviction became final on January 28, 2010, ninety days after denial of his application for supervisory review in the Louisiana Supreme Court on March 28, 2008 in connection with his direct appeal. *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). Thereafter, approximately 245 days elapsed until the petitioner filed his PCR application on or about September 30, 2010. The petitioner's PCR application remained pending until the

Louisiana Supreme Court denied his writ application on November 14, 2014. Seventy-six days elapsed between the denial of the petitioner's writ application and the filing the instant petition on January 29, 2015. Therefore, only 321 days of un-tolled time elapsed during which the petitioner did not have any properly filed application for post-conviction or other collateral relief pending before the state courts. As such, the petitioner's habeas petition was timely filed and the Court will now address the merits of the same.

## Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id*. *See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable

application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## Substantive Review

### *Claim 1: Non-Unanimous Verdict*

The petitioner claims that his conviction by a non-unanimous jury verdict violated his Sixth Amendment right to trial by jury. Louisiana Constitution article I, § 17(A) and Louisiana Code of Civil Procedure article 782(A) provide that cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to reach a verdict. The petitioner was tried before a twelve person jury, and eleven jurors voted to convict the petitioner.

The petitioner argues that the United States Supreme Court decision in *Apodaca v. Oregon*, 406 U.S. 404 (1972) holding that non-unanimous jury verdicts do not violate a defendant's constitutional rights, has been called into question by *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The petitioner's argument is without merit.

Since deciding *Apodaca,* the United States Supreme Court has repeatedly declined to grant certiorari to reconsider the constitutionality of non-unanimous verdicts in state proceedings. *See, e.g., Barbour v. Louisiana,* 562 U.S. 1217 (2011); *Herrera v. Oregon,* 562 U.S. 1135 (2011); and *Jackson v. Louisiana,* 134 S.Ct. 1950 (2014). Furthermore, as explained by the court in *State v. Jones,* 13-367 (La. App. 5 Cir. 12/27/13), 131 So.3d 1065,

> "The issue before the court in *Apprendi* was whether the defendant could be sentenced to additional incarceration upon a finding of guilt of an additional element of the crime *by a judge* after discharge of the jury, and *by proof less than beyond a reasonable doubt.* Clearly the New Jersey statute in *Apprendi* was

unconstitutional, but the unconstitutionality had nothing to do with non-unanimous verdicts, which were not at issue in *Apprendi*. The insignificant reference to the requirement of a unanimous verdict was simply because New Jersey's Constitution requires unanimous verdicts, and therefore a verdict on the additional element of the crime used to enhance the possible penalty also had to be decided by a unanimous jury, and not by the presiding judge."[1]

As such, the law of *Apodaca* remains settled. The petitioner can claim no violation of federal law from his conviction by a non-unanimous verdict.

### *Claim 2: Sufficiency of the Evidence*

The petitioner asserts that the evidence was insufficient for a rational jury to conclude that he failed to prove he was insane at the time of the offense. In a federal habeas corpus proceeding, the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979) provides the standard for testing the sufficiency of the evidence. The question "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319.

In Louisiana, a criminal defendant is presumed to be sane and responsible for his actions. *See* Louisiana Revised Statute 14:432, and *State v. Peters*, 94-0283 (La. 10/17/94), 643 So.2d 1222, 1225. The defendant may rebut this presumption based on a preponderance of the evidence. *See* Louisiana Code of Civil Procedure article 652 and *State v. Silman,* 95-0154 (La. 11/27/95), 663 So.2d 27, 32. "Legal insanity is proved if the circumstances indicate that a mental disease or mental defect rendered the offender incapable of distinguishing between right and wrong with reference to the conduct in question." *Peters, 643 So.2d at 1225.* In light of Louisiana law on the issue of insanity, the question under the *Jackson* sufficiency standard is whether, viewing the evidence in the light most favorable to the state, any rational trier of fact

---

[1] In support of his claim, the petitioner also cites *Jones v. United States*, 526 U.S. 227 (1999) and *Ring v. Arizona,* 536 U.S. 584 (2002); however, these cases also did not address the constitutionality of non-unanimous jury verdicts.

could have found beyond a reasonable doubt that the petitioner did not prove by a preponderance of the evidence that he was insane at the time of the offense. *Id*.

The state appellate court invoked the *Jackson* standard in the petitioner's direct appeal. The Court now must determine whether that court's application of that standard was objectively unreasonable.

At trial, Drs. Deland, Zimmerman, and Blanche, witnesses for the defense, opined that the petitioner suffered from post traumatic stress disorder ("PTSD") due to his military service in Iraq, and due to the symptoms of the disease, was unable to distinguish right from wrong at the time of the offense. Dr. Hoppe, a witness for the State, opined that the petitioner did not necessarily suffer from PTSD, and that the petitioner had recounted to him that he typically played Nintendo and watched television in Iraq as his desk job consisted primarily of answering a phone. During his first deployment, the petitioner's only involvement with combat was hearing gunfire inside a mosque. During his second deployment, the petitioner reported that he was shot at. As such, Dr. Hoppe questioned whether the petitioner's combat experiences met the guidelines for PTSD. Dr. Hoppe opined that the petitioner did not have a break with reality. Rather, the petitioner was angry and vengeful due to his obsession with S.D.

While the testimony of an expert cannot be arbitrarily ignored, material variations between expert themselves create an issue of credibility for the jury to decide what weight is to be given to the expert testimony, with due consideration being given to the fact that the trier of fact has the opportunity to observe the witness. *See Mims v. U.S.,* 375 F.2d 135, 14-144 (5th Cir. 1967). As noted by the appellate court, Dr. Hoppe's testimony was contrary to that of Drs. Deland, Zimmerman, and Blanche, and the jury apparently credited this testimony, and the testimony of other state witnesses concerning the petitioner's actions at the time of the offense,

which the jury was free to do. A jury's finding of facts will be overturned only when necessary to preserve the "fundamental protection of due process of law." *Jackson,* 443 U.S. at 319. No such protection is warranted in the instant matter.

### Claim 3: Ineffective Assistance of Counsel

The petitioner asserts that his counsel was ineffective for failing to request a sanity commission and failing to object to a jury instruction. A habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id*.

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See, e.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See, e.g., Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin v. McCotter*, *supra*, 796 F.2d at 817. Great deference is

given to counsel's exercise of professional judgment. *Bridge v. Lynaugh*, *supra*, 838 F.2d at 773; *Martin v. McCotter*, *supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington*, *supra*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter*, *supra*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id*. at 816-17. Both the *Strickland* standard for ineffective assistance of counsel and the standard for *federal* habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). The above showing is one that the petitioner cannot make in the instant case.

### *Claim 3(a): Failure to Request a Competency Hearing*
### *and Claim 3(b): Failure to Present a Defense*

The petitioner alleges that his trial counsel was ineffective for failing to request a sanity commission to assess his capacity to understand the proceedings since the petitioner had been prescribed medications for depression, anxiety, and to aid in sleeping at the time of trial. The petitioner presents no evidence that he was actually incompetent to stand trial. Rather he merely points to the testimony of Dr. Blanche regarding his mental illness to suggest incompetency

during trial. However, Dr. Blanche's testimony is devoid of any information as to whether the petitioner had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). There is nothing in the record to indicate the petitioner's demeanor before counsel or the Court was ever questionable. Accordingly, the failure of the petitioner's trial counsel to file a frivolous request for examination by a sanity commission was neither deficient nor prejudicial. *See Mays v. Stephens,* 757 F.3d 211, 216 (5th Cir. 2014). Petitioner's assertion that counsel failed to present a defense simply repeats this same argument and is therefore rejected for the same reasons set forth above.

### *Claim 3(c): Failure to Object*

The petitioner asserts that his trial counsel was ineffective for failing to object to an erroneous jury instruction. An attorney's failure to object does not constitute deficient representation unless there is a sound basis for the objection. *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997). Stated differently, a futile or "meritless objection cannot be grounds for a finding of deficient performance." *Id*.

The petitioner alleges that the trial court instructed the jury as follows:

> "[I]f you find that the state proved beyond a reasonable doubt that the defendant did commit the offense charged or a responsive verdict and that the defendant established beyond a preponderance of the evidence that he was unable to distinguish right from wrong with respect to the conduct in question at the time of the offense, then your verdict must be guilty by reason of insanity."

The petitioner asserts that his trial counsel should have objected to the jury instruction since "guilty by reason of insanity" is not a proper responsive verdict. A review of the record reveals, however, that the trial court actually instructed the jury as follows:

> "In this case the defendant has entered a plea of not guilty and not guilty by reason of insanity. Because of such a plea, you must determine whether defendant

committed the offense charged or an offense responsive thereto. Unless you find beyond a reasonable doubt that the defendant committed the offense charged or an offense responsive thereto, you must find the defendant not guilty. If you find beyond a reasonable doubt that the defendant committed the offense charged or an offense responsive thereto, then you must determine whether he was insane at the time the offense was committed…If the circumstances indicate that because of a mental disease or defect the defendant was incapable of distinguishing between right and wrong with reference to the conduct in question, the defendant must be found not guilty by reason of insanity."

As noted by the petitioner, pursuant to Louisiana Code of Criminal Procedure article 816, "not guilty by reason of insanity" is a responsive verdict when a defendant has pled insanity. Accordingly, there was no sound basis for an objection by the petitioner's trial counsel and the petitioner's claim is without merit.

Should the petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original). In the instant case, the Court finds that reasonable jurists would not debate the denial of the petitioner's § 2254 application or the correctness of the procedural ruling. Accordingly, it is appropriate that, in the

event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## **RECOMMENDATION**

It is recommended that the petitioner's application for habeas corpus relief be denied, with prejudice, as untimely. It is further recommended that, in the event that the petitioner seeks to pursue an appeal, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on November 20, 2017.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**